David R. Ehrlich (de-9786)
Stagg Wabnik Law Group LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4550
dehrlich@staggwabnik.com
*Attorneys for Plaintiff*
*Sujal Bharucha*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SUJAL BHARUCHA,

             Plaintiff,                              **COMPLAINT**

      -against-                        **JURY TRIAL DEMANDED**

SIEBERT WILLIAMS SHANK & CO., LLC,

             Defendant.
-------------------------------------------------------------------X

       Plaintiff Sujal Bharucha, by and through his attorneys, Stagg Wabnik Law Group LLP, as and for his complaint against Defendant Siebert Williams Shank & Co., LLC ("SWS" or the "Company") states and alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff is a highly dedicated licensed broker with over twenty-five years of experience and a track record of success in securities and equity trading.  He developed a frightening and embarrassing medical condition while working remotely during the COVID-19 pandemic, and Defendant discriminated against Plaintiff based on that medical condition when implementing its return to office policy in March 2022.  Defendant failed to engage in a proper interactive process with Plaintiff, and expressed its annoyance with Plaintiff's accommodation requests, which led to Plaintiff lodging a complaint against those involved with assessing his accommodation request.

As a result of Plaintiff's medical condition, accommodation request, and complaint, Defendant discriminated and retaliated against Plaintiff by discharging him using a completely bogus and pretextual reason in doing so. Defendant's discrimination and retaliation went as far as reporting Plaintiff to the Financial Industry Regulatory Authority ("FINRA"), and deliberately misrepresented FINRA's investigation in its Position Statement responding to Plaintiff's EEOC Charge. FINRA's investigation wholly debunked the pretextual reason Defendant provided for discharging Plaintiff.

2.     Plaintiff brings this action against Defendant for discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL" or "Executive Law"), N.Y. Exec. Law § 290 *et seq.*, and New York City Human Rights Law ("NYCHRL" or "Administrative Code"), N.Y. City Admin. Code § 8-101 *et seq.* Defendant's conduct was willful and wanton and showed a reckless disregard for Plaintiff's rights under the law, which caused and continues to cause Plaintiff to suffer substantial economic and noneconomic damages, including severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331—federal question—because this action is based on a violation of federal law, i.e., the Americans with Disabilities Act, 42 U.S.C. § 12101.

4.     Pursuant to 28 U.S.C. § 1367, this Court has jurisdiction over the New York State and New York City claims by way of supplemental jurisdiction.

5.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c), as Plaintiff's claims arose within this District, and Defendant's principal place of business is located in the District.

## ADMINISTRATIVE PROCEDURES

6.      Plaintiff filed a timely charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

7.      On September 11, 2024, the EEOC issued a right to sue letter to Plaintiff, attached as Exhibit A.  This action timely follows.

## PARTIES

8.      At all relevant times herein, Plaintiff is an individual residing in Nassau County, New York. Plaintiff began seeing a gastroenterologist in June 2021 in connection with worrisome rectal bleeding.  He suffers from extreme internal hemorrhoids and is regularly treated by a colorectal surgeon.

9.      Plaintiff's medical condition qualifies him as disabled within the meaning of the ADA, NYSHRL, and NYCHRL.

10.     Plaintiff started working at Williams Capital Group in 2015, which subsequently merged with Siebert Cisneros Shank to form Defendant company SWS.

11.     At all relevant times herein, Defendant was/is a full-service investment banking and financial services company formed in Delaware and headquartered in New York City, with at least fifteen (15) employees.

12.     Defendant is an employer under the ADA, NYSHRL, and NYCHRL.

## STATEMENT OF FACTS

*Plaintiff's Illness and Initial Accommodation Requests*

13.     In late 2020 / early 2021, Plaintiff began experiencing serious medical symptoms including an immediate need for a bathroom and rectal bleeding.  During this time, Defendant's employees were working remotely due to the novel coronavirus.  Plaintiff discussed his issues and their

severity with his direct supervisor and manager Steve Carl ("Carl"). Plaintiff coordinated all dates and times for doctor appointments related to his condition with Carl.

14.     Because of his medical condition, Plaintiff required access to a bathroom facility equipped with a shower to manage his symptoms and bleeding, address excretion issues, alleviate discomfort, manage washing needs, and facilitate changing into clean clothing when necessary. Working remotely enabled Plaintiff to manage his symptoms. Commuting became problematic because Plaintiff was not guaranteed bathroom access, and working at the office did not allow him access to showers and other facilities and materials necessary to treat his symptoms.

15.     Plaintiff was able to successfully perform all of the essential functions of the job working remotely.

16.     Defendant implemented a return to office policy in March 2022. Plaintiff contacted Carl to explain that he was still unable to return to the office because of his condition. Plaintiff had to use two vacation days for the first days he was scheduled to be in the office so he could obtain a letter from his colorectal surgeon in support of his necessary medical accommodation to work remotely. Carl told Plaintiff that Plaintiff did not need a letter from his doctor, and that Plaintiff could continue working from home. Plaintiff was able to perform all of the essential functions of his job working remotely, and had done so successfully for at least two full years prior to the return to office policy in March 2022.

17.     Plaintiff was subsequently contacted by HR manager Melissa Rowe ("Rowe"), who wanted to know why Plaintiff had not returned to the office. Plaintiff indicated that he had approval from Carl and Plaintiff's second-level supervisor and co-head of corporate finance Sobani Warner ("Warner") to work remotely due to his medical condition. Rowe told Plaintiff that he needed to discuss his medical condition with HR instead of his supervisors. Upon Rowe's request, Plaintiff

sent HR a letter from his treating physician, a colorectal surgeon, indicating the basis for his reasonable accommodations request.

18.    In August 2022, Warner contacted Plaintiff to ask why he was working remotely. Warner explained that HR notified her that Plaintiff had not been in the office, but HR did not mention Plaintiff's medical condition or accommodation. Plaintiff told Warner that he had an accommodation to work remotely and that he was working with HR.

19.    Immediately following the call with Warner, Plaintiff contacted Rowe to discuss why he was continually receiving pressure to return to the office, and Rowe inexplicably responded that Plaintiff was required to be in the office four days a week. Like Warner, Rowe did not acknowledge Plaintiff's medical condition or accommodation. Rowe further ignored Plaintiff's email restating his need for an accommodation and updated medical documentation.

20.    Plaintiff's emails and requests regarding his continued accommodation request went unanswered. In November 2022, Rowe and COO/CCO DiAnne Calabrissotto ("Calabrissotto") scheduled a zoom meeting with Plaintiff to discuss "alternatives to current remote work options" for November 21, and subsequently rescheduled it to November 22. Unfortunately, Defendant never sent Plaintiff an invite for the call on November 22, and the meeting did not take place. Plaintiff did not hear from Defendant regarding his continued accommodation request (through HR or other non-HR employees) until January 20, 2023, when HR rescheduled the zoom meeting for February 2, 2023.

21.    The February 2, 2023 zoom meeting proved useless—HR's only alternative to Plaintiff's accommodation request of working remotely was for Plaintiff to return to the office one to two days a week. Defendant provided no reasonable explanation for why Plaintiff had to return to the office one to two days a week, as Plaintiff was performing the essential function of the job

remotely.  Plaintiff offered and subsequently provided Defendant with an updated letter from his medical provider, as he continually expressed the need for the reasonable accommodation of working remotely.

22.    On March 17, 2023, Rowe sent Plaintiff and Warner an email regarding Defendant's return to office policy and stated that Plaintiff was required to be in the office four days a week starting at the end of that month, without any reference to Plaintiff's health or accommodation request. This was a denial of Plaintiff's reasonable accommodation request.  In issuing this directive, Defendant failed to engage in the legally required interactive dialogue regarding Plaintiff's disability and need for an accommodation.  Defendant also failed to explain why Plaintiff could not be accommodated by working remotely, as he continued to perform all of the essential functions of his job in a remote fashion.  In fact, Warner and a number of other employees in the equities department worked remotely and out-of-state. Plaintiff described the policy's uneven application to Defendant to no avail.

23.    Plaintiff responded to Rowe's email expressing his disappointment and explicitly mentioned Defendant's failure to engage in the requisite interactive process under the ADA.  Rowe replied with inaccurate information pertaining to Plaintiff's requests.  In further email exchanges, Plaintiff again complained of Defendant's failure to comply with the ADA.  Defendant was well-aware of Plaintiff's valid concerns regarding the accommodation process.

24.    Plaintiff contacted Warner regarding Defendant's lack of honoring Plaintiff's accommodation request and its repeated failure to take his medical condition and accommodation request seriously.  Plaintiff feared that lodging a formal complaint would result in retaliation, so Warner suggested that she contact Janelle Johnson ("Johnson"), in the General Counsel's office.

When Johnson did not reach out to Plaintiff or respond to his emails, Plaintiff reached out to Ateesh Chanda ("Chanda"), Defendant's General Counsel.

25.     In May 2023, Chanda told Plaintiff that his accommodation to work remotely was granted until mid-July 2023, and that Chanda would be more involved with the process in the future. Unfortunately, Chanda's words were nothing more than lip service.

_Defendant's Illegal and Pretextual Termination of Plaintiff_

26.     In September 2023, Plaintiff received a summons from Garden City Village Court for an upcoming hearing regarding a ticket he allegedly received on November 26, 2019—the ticket was purportedly issued in Garden City on a weekday at 2:42 p.m.  Plaintiff did not recall receiving the almost four-year-old ticket whatsoever.  Plaintiff assumed the ticket was issued in error because he remembered working at Defendant's office in Manhattan during that time.  His attorney for the ticket suggested that Plaintiff check for emails or other records that would show Plaintiff was in Manhattan while the ticket was issued and could not have received the ticket in Garden City that afternoon.  Therefore, Plaintiff reached out to Carl about finding evidence to prove his location to dispute the ticket.

27.     Plaintiff reviewed his past emails from November 26, 2019, and found two sets of emails that could show that he was in Manhattan when the ticket was issued.  Plaintiff sent the emails to Carl and then Carl forwarded them to Warner to match them with Defendant's records of the emails. According to Defendant, the emails Plaintiff sent had a timestamp that was off by one hour from the timestamp recorded in Defendant's database.  The timestamp on the emails Plaintiff sent to Defendant was shortly after the ticket was issued, and the timestamp Defendant had was shortly before the ticket was issued.

28.    Either way, whether the timestamp on Plaintiff's copy or Defendant's system was correct, both were within 40 minutes of when the ticket was issued—which would have definitively shown that Plaintiff could not have been in Garden City at 2:42 p.m.[1]

29.    Warner told Plaintiff that the emails were not sufficient to verify that Plaintiff was working in Manhattan when the ticket was issued.  Defendant's IT Department told Plaintiff that the metadata for the email was overwritten, and the company had no data to determine the exact location where the emails were sent.  However, Plaintiff's practice was that all emails were sent from his computer and office in Manhattan, or through his phone.  The emails from November 26, 2019 had no indications they were sent from his phone, which would lead one to conclude they were sent from his Manhattan computer and office.  Nevertheless, the company believed the evidence was not definitive and conveyed to Plaintiff that the company would not write Plaintiff a letter stating that he was in Manhattan when the ticket was issued.  Plaintiff accepted this and resolved the ticket by paying a fine and assumed nothing more would come of this odd incident.

30.    Defendant, however, saw an opportunity to use the situation to discharge Plaintiff because of his disability, need for accommodation, and complaints about Defendant's handling of his accommodation requests.  Chanda called Plaintiff on October 6, 2023, informing him that Defendant had placed Plaintiff on administrative leave pending a company investigation of Defendant's accusation that Plaintiff altered the November 26, 2019 emails he sent to Carl and Warner.  Plaintiff immediately denied making any alterations and Chanda stated they would "wrap up" the investigation in a few days.

31.    Plaintiff called Carl shortly after Chanda's call on October 6, 2023, to inform Carl that he was placed on administrative leave based on the accusation that he altered emails.  Carl stated that

---

[1] The train from Pennsylvania Station to the Garden City Station is approximately 57 minutes.

he knew nothing about this.  Plaintiff also spoke with Warner on that day, and Warner simply advised to cooperate with legal.  Plaintiff reiterated throughout that he did not alter any emails.

32.    Plaintiff suspected that something untoward was going on with the company's actions.  On October 9, 2023, Plaintiff called Christopher Williams ("Williams"), the Chairman of the Board, who hired Plaintiff many years ago, to see if he knew what was going on.  Williams knew nothing of the administrative leave or issues regarding Plaintiff.  Plaintiff explained the accusation, and Williams stated that even if Plaintiff altered the emails, it was inconsequential and that the company better be sure of any alterations before acting on them.  Plaintiff reiterated that he never made any such alterations.

33.    Johnson and Chanda interrogated Plaintiff during a Microsoft Teams meeting on October 10, 2023.  Plaintiff stated that he simply forwarded the emails on his system for November 26, 2019 to Carl and Warner, and did not alter anything, including the timestamps.  The three spoke again on October 17, 2023.  Johnson and Chanda asked Plaintiff additional questions about the ticket, and he told them what occurred as described above.

34.    On October 20, 2023, Warner had Plaintiff join a Zoom meeting with her and Rowe.  Warner told Plaintiff that the investigation determined Plaintiff was not truthful, and he was fired for "dishonesty".  Defendant purportedly based this determination on the discrepancy between the timestamps on the emails Plaintiff provided Defendant with the timestamp that Defendant purportedly had on its system for those emails—maintaining false records, i.e., claiming Plaintiff altered the timestamp on the emails he sent to Carl and Warner.

35.    The assertion that Plaintiff altered the timestamp on the emails to defend against the ticket was absurd.  In fact, the purported alteration would make it more difficult for Plaintiff to defend against the ticket.  It was not as if the timestamp information Defendant had would have allowed

for Plaintiff to make it home to Garden City in time to be issued the ticket, and Plaintiff supposedly altered it to make it look like he could not have been in Garden City at that time. That was simply not the case. The discrepancy between the timestamps of Plaintiff's email copies (shortly after the ticket was issued) and Defendant's information (shortly before the ticket was issued) was wholly inconsequential. Both timestamps show that if Plaintiff sent the emails from the Manhattan office at either time, he could not have been in Garden City at 2:42 p.m.

36.     There are a number of technical reasons that could explain the timestamp discrepancy. For example, it could be due to Day Light Savings Time issues (the discrepancy was exactly one hour), time zone issues, computer system issues that were occurring at that time, or other issues with Outlook. The only illogical and absurd explanation is that Plaintiff deliberately altered the timestamp to make it more difficult for him to defend against the ticket. The idea that Plaintiff would conjure up a fraud on his employer to defeat a ticket (which was ultimately resolved as a parking violation) is also absurd.

37.     Defendant's purported contention that it discharged Plaintiff for dishonesty, including altering the timestamp of an email, is a pretext for its discrimination and retaliation. The contention that Plaintiff altered the timestamp on emails to defend against a traffic ticket is not only false, but also so absurd and illogical that it evinces Defendant's illicit intent in discharging Plaintiff.

38.     Defendant's discriminatory and retaliatory intent is also shown by the way it handled Plaintiff's accommodation requests, the clear disregard of Plaintiff's rights, animus and annoyance shown by Defendant's personnel when Plaintiff requested the accommodation, the denials of his accommodation request until Plaintiff forced the legal department to become involved, and the close proximity in time between his complaints about Defendant's handling and denial of his accommodation requests and the discharge. The discriminatory and retaliatory intent is further

shown by the exaggerated reaction to the timestamp issue, which had absolutely nothing to do with financial trades or other business operations of the company.

39.     Defendant did not only discharge Plaintiff based on the timestamp issue but also took a further and even more unnecessary step of reporting Plaintiff to FINRA for allegedly altering company documents.

40.     FINRA investigated the matter, and in a June 5, 2023 letter stated that it found no violations pertaining to the document alteration accusation and closed the matter.  In responding to Plaintiff's EEOC charge, Chanda, in his June 14, 2023 submission, deliberately misrepresented FINRA's investigation and its result to the EEOC.[2]  Such misrepresentations are characteristic of Defendant's lack of integrity and its sinister actions targeting Plaintiff.

41.     Defendant illegally terminated Plaintiff because of his disability and his request for the accommodation to work remotely, in retaliation for his complaints about Defendant's handling of his accommodation request.  Plaintiff was justified in complaining about the nightmarish process of seeking and receiving medically necessary accommodations.  Plaintiff's complaints about Defendant's complete failure to engage in the interactive process and deny his accommodations were justified and understandable, and most notably they were temporally proximate to the bogus ticket-alibi incident that Defendant used as a pretext for its illegal discharge of Plaintiff.

---

[2] Chanda's June 14, 2024 response claimed "FINRA viewed [Plaintiff's] conduct to be sufficiently serious that it initiated a cause examination, which included multiple requests for documents and information.  The examination concluded more than seven months after [Plaintiff's] termination."  Notably, Chanda's response—dated after FINRA's letter closing the investigation—failed to note that FINRA opted against further action.  As Plaintiff's EEOC attorney aptly noted, "To taint [Plaintiff] with the allegation of a regulatory investigation while withholding the determination is duplicitous at best."

## AS AND FOR A FIRST CAUSE OF ACTION
### Disability Discrimination in Violation of the ADA

42.     Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

43.     42 U.S.C. § 12112 prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment."

44.     Plaintiff is a "qualified individual" with a "disability" in accordance with the ADA.

45.     Plaintiff was able to perform the essential functions of his job with the reasonable accommodation of being able to work remotely.

46.     Defendant is a covered employer with at least fifteen (15) employees.

47.     Defendant had knowledge of Plaintiff's disability.

48.     Defendant discharged Plaintiff because of his disability because Defendant did not want to provide him with a reasonable accommodation.

49.     The discriminatory intent is demonstrated by the reaction of Defendant's personnel to Plaintiff's requests for an accommodation, Defendant's handling of his requests for an accommodation, the denial by Defendant of his accommodation request, the transparently bogus and pretextual reason provided by Defendant for Plaintiff's discharge, and the temporal proximity of the legal department's involvement and Plaintiff's discharge.

50.     As a direct and proximate result of Defendant's disability discrimination in violation of the ADA, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.  Plaintiff also suffered and continues to suffer emotional distress, mental

anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions.

51.    Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### Disability Discrimination: Failure to Accommodate in Violation of the ADA

52.    Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

53.    Pursuant to the ADA, Defendant is legally required to engage in an interactive dialogue to discuss reasonable accommodations relating to Plaintiff's disability.  The ADA also requires that an employer, such as Defendant, provide reasonable accommodations to an employee, such as Plaintiff, to allow Plaintiff to perform the essential functions of his job with his disability.

54.    Plaintiff had a disability under the ADA.

55.    Plaintiff was able to perform the essential functions of his job with the accommodation of working remotely.

56.    Defendant failed to properly engage in the legally required interactive dialogue with respect to Plaintiff's accommodation requests.

57.    Defendant unreasonably denied Plaintiff's request for a reasonable accommodation as described above.

58.    Defendant discharged Plaintiff because of his reasonable accommodation request by formulating a bogus and pretextual reason for his discharge, when the real reason for his discharge was his need and request for a reasonable accommodation.

59.     As a direct and proximate result of Defendant's disability discrimination in violation of the ADA, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.  Plaintiff also suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions.

60.     Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### Retaliation in Violation of the ADA

61.     Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

62.     42 U.S.C. § 12203 prohibits retaliation from an employer when an employee exercises their rights under the ADA.   Plaintiff's accommodation request and complaints of Defendant's mishandling of his situation and denial of rights were "protected activities" within the meaning of the statute.

63.     Plaintiff complained about Defendant's failure to adequately address his accommodation requests and the denial of his requests to Defendant, to the extent that the matter was escalated to the legal department to address the issue.

64.     Rather than genuinely address the complaints and accommodate Plaintiff's reasonable request, Defendant exploited a random opportunity—Plaintiff's attempt to have Defendant corroborate his location in connection with the ticket—to destroy Plaintiff's career.

65.    In retaliation for Plaintiff's exercise of protected activity, Defendant discharged Plaintiff, and in doing so, proffered a bogus and pretextual excuse for the discharge.

66.    As a direct and proximate result of Defendant's retaliation in violation of the ADA, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.  Plaintiff also suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions.

67.    Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Disability Discrimination in Violation of the Executive Law

68.    Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

69.    Executive Law § 296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer…because of an individual's…disability…to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

70.    Plaintiff is an individual with a disability in accordance with the Executive Law.

71.    Defendant is a covered employer for the purpose of the Executive law.

72.    Defendant had knowledge of Plaintiff's disability.

73.    Defendant discharged Plaintiff because of his disability because Defendant did not want to provide him with a reasonable accommodation.

74.    The discriminatory intent is demonstrated by the reaction of Defendant's personnel to Plaintiff's requests for an accommodation, Defendant's handling of his requests, Defendant's denial of his request, the transparently bogus and pretextual reason provided by Defendant for his discharge, and the temporal proximity of the legal department's involvement and Plaintiff's discharge.

75.    As a direct and proximate result of Defendant's disability discrimination in violation of the Executive Law, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.  Plaintiff also suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions.

76.    Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Disability Discrimination: Failure to Accommodate in Violation of the Executive Law**

77.    Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

78.    Pursuant to the Executive Law, Defendant is legally required to engage in an interactive dialogue to discuss reasonable accommodations relating to Plaintiff's disability.  The Executive Law also requires that an employer, such as Defendant, provide reasonable accommodations to an employee, such as Plaintiff, to allow Plaintiff to perform the essential functions of his job with his disability.

79.    Plaintiff had a disability under the Executive Law.

80.    Plaintiff was able to perform the essential functions of his job with the accommodation of working remotely.

81.    Defendant failed to properly engage in the legally required interactive dialogue with respect to Plaintiff's accommodation requests.

82.    Defendant unreasonably denied Plaintiff's request for a reasonable accommodation as described above.

83.    Defendant discharged Plaintiff because of his reasonable accommodation request by formulating a bogus and pretextual reason for his discharge, when the real reason for his discharge was his need and request for a reasonable accommodation.

84.    As a direct and proximate result of Defendant's disability discrimination in violation of the Executive Law, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.  Plaintiff also suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions.

85.    Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Retaliation in Violation of the Executive Law

86.    Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

87.    Executive Law § 296(7) prohibits retaliation from an employer when an employee exercises their rights under the Executive Law.  Plaintiff's accommodation request and complaints

of Defendant's mishandling of his situation and denial of rights are protected activities under the Executive Law.

88.    Plaintiff complained about Defendant's failure to adequately address his accommodation requests and the denial of his requests to Defendant, to the extent that Warner had to escalate the matter to the legal department.

89.    Instead of genuinely addressing Plaintiff's complaints and accommodating his reasonable request, Defendant exploited a random opportunity—Plaintiff's ticket—to destroy Plaintiff's decades long career.

90.    In retaliation for Plaintiff exercising his rights under the Executive Law, Defendant discharged Plaintiff. In discharging Plaintiff, Defendant proffered a bogus and pretextual excuse. Defendant's excuse was particularly ill-conceived and its carelessness evinces Defendant's discriminatory intent.

91.    As a direct and proximate result of Defendant's retaliation in violation of the Executive Law, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages. Plaintiff also suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions.

92.    Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Disability Discrimination in Violation of the Administrative Law

93.     Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

94.     New York Administrative Law § 8-107 provides that "it shall be an unlawful discriminatory practice: (1) For an employer or an employee or agent thereof, because of the actual or perceived…disability…of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

95.     Plaintiff is an individual with a disability and Defendant is an employer pursuant to the Administrative Law.

96.     Defendant had knowledge of Plaintiff's disability.

97.     Plaintiff's disability was the motivating factor in his termination because Defendant did not want to provide him with a reasonable accommodation.

98.     Defendant's discriminatory intent is demonstrated by: Defendant's personnel's reaction to Plaintiff's accommodation requests, Defendant's handling of his requests, Defendant's denials of his requests, the transparently bogus and pretextual reason provided by Defendant for Plaintiff's discharge, and the temporal proximity between Plaintiff's complaints and his retaliatory discharge.

99.     As a direct and proximate result of Defendant's disability discrimination in violation of the Administrative Law, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.  Plaintiff also suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions.

100.    Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**Disability Discrimination: Failure to Accommodate in Violation of the Administrative Law**

101.    Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

102.    Pursuant to the Administrative Law, Defendant is legally obligated to engage in an interactive dialogue with Plaintiff to discuss reasonable accommodations for Plaintiff's disability. The Administrative Law also requires that the employer provide reasonable accommodations to an employee thereby enabling the employee to perform the essential functions of their job with their disability.

103.    Plaintiff had a disability under the Administrative Law.

104.    Plaintiff was able to perform the essential functions of his job with the accommodation of working remotely.

105.    Defendant repeatedly failed to properly engage in the legally required interactive dialogue with Plaintiff regarding Plaintiff's accommodation requests.

106.    Defendant's denial of Plaintiff's request was entirely unreasonable as explained above.

107.    As a direct and proximate result of Defendant's disability discrimination in violation of the Executive Law, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.  Plaintiff also suffered and continues to suffer emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions.

108.    Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

**AS AND FOR A NINTH CAUSE OF ACTION**
**Retaliation in Violation of the Administrative Law**

109.    Plaintiff repeats, reiterates, and realleges the allegations contained in the preceding paragraphs of this Complaint as if stated fully herein.

110.    New York Administrative Law § 8-107(7)(v) makes it unlawful for an employer to retaliate or discriminate against an employee requesting a reasonable accommodation.

111.    Plaintiff complained to Warner about Defendant's failure to address his medical condition and requested accommodation.  Warner contacted Defendant's legal department to address the issue.

112.    Defendant went far beyond unreasonably denying Plaintiff's accommodation requests and instead opted for retaliation.  Defendant's retaliation is apparent in Plaintiff's termination and Defendant's decision to report Plaintiff to FINRA with the apparent goal of sabotaging his career.

113.    Plaintiff was terminated for requesting a reasonable accommodation and for complaining about Defendant's repeated failure to engage in the legally required steps.  The explanation Defendant provided for Plaintiff's termination epitomizes Defendant's illegal intentions and actions.

114.    As a direct and proximate result of Defendant's retaliation in violation of the Administrative Law, Plaintiff suffered and continues to suffer monetary losses, including but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages.  Plaintiff also suffered and continues to suffer emotional distress,

mental anguish, humiliation, embarrassment, loss of enjoyment of life, and reputational damages as a result of Defendant's discriminatory actions and retaliation.

115.    Plaintiff is entitled to attorney's fees and costs, and because Defendant's conduct was willful, reckless, outrageous, intentional and/or malicious, Plaintiff is also entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant judgment in his favor

and against Defendant:

A. Awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

B. Awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and other physical and mental injuries;

C. Awarding Plaintiff damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

D. Awarding Plaintiff punitive damages in an amount to be determined at trial;

E. Awarding Plaintiff cost that Plaintiff incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

F. Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
      December 9, 2024

                                    Stagg Wabnik Law Group LLP

                                  _____
                                  David R. Ehrlich
                                  Claire J. Lippman
                                  *Attorneys for Plaintiff*
                                  *Sujal Bharucha*
                                  Stagg Wabnik Law Group LLP
                                  401 Franklin Avenue
                                  Garden City, New York 11530
                                  (516) 812-4518
                                  dehrlich@staggwabnik.com
                                  clippman@staggwabnik.com